### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RAYMOND SHORTER, | : |
| Plaintiff, | : |
| v. | : CIVIL ACTION NO. 22-5089 |
| SUPERINTENDENT SORBER *et al.*, | : |
| Defendants. | : |

### MEMORANDUM OPINION

**SCHMEHL, J. /s/ JLS**                                                                                     April 3, 2024

This case arises from the medical treatment, or alleged lack thereof, received by Plaintiff Raymond Shorter while he was incarcerated at SCI Phoenix. Presently before the Court are motions to dismiss filed by, on the one hand, Defendants Joseph Walsh, PA, John Nicholson, PA, and Vanessa Amoah Oti Akenten, MD (the "Medical Defendants"), and on the other hand, Defendants Sorber, Gredic-Almond, Sipple, Raymond, Nunez, Gery, Green, Shinholster, Fernandez, and Saunders (the "Commonwealth Defendants").[1] (*See* Mot. to Dismiss, ECF Nos. 17, 18.). For the following reasons, the Court grants both Motions.

### I. BACKGROUND

Mr. Shorter, who at the relevant time was incarcerated at SCI Phoenix, alleges that in May 2022, he sought medical attention after developing a severe rash. (Compl. ¶ 2.) The healthcare providers on duty, Dr. Akenten and Mr. Walsh, initially disagreed as to the cause of the

---

[1] Neither the Complaint (ECF No. 2) nor the Commonwealth Defendants' Motion indicates the full name of these parties.

rash: Dr. Akenten suggested scabies, whereas Mr. Walsh insisted it was something else. (*Id.* ¶ 3.) The medical providers ultimately pursued Mr. Walsh's theory. When the prescribed treatments failed to improve his condition, Mr. Shorter was again examined by Dr. Akenten and Mr. Walsh in June 2022. Mr. Shorter claims that after he requested to see an outside dermatologist (and Dr. Akenten apparently agreed), Mr. Walsh replied, "Whatever." (*Id.* ¶ 7.) Mr. Shorter was eventually prescribed a steroid. Around one month later, after the steroid had not remedied his symptoms, Mr. Shorter requested to see the medical team again. He allegedly asked Ms. Green, a correctional officer, to accompany him to the appointment, because Mr. Walsh had previously been disrespectful to Mr. Shorter. (*Id.* ¶ 9.) Although Ms. Green at first agreed, she was "called to another post" and had to leave. (*Id.*) Mr. Shorter initially met with Mr. Kurklin,[2] who called in Mr. Walsh for assistance. (*Id.*) Mr. Shorter alleges that Mr. Walsh was primarily concerned with an alleged instruction from Ms. Sipple, who oversaw the medical department, that Mr. Shorter must pay for the medical services he received. (*Id.* ¶¶ 9–10.) When Mr. Kurklin mentioned Mr. Shorter's request to see an outside dermatologist, Mr. Walsh allegedly replied that he "didn't give a 'fuck' what [Mr. Shorter] wanted." (*Id.* ¶ 9.) Mr. Shorter ultimately informed Mr. Shinholster, another correctional officer, that he wanted to leave to avoid Mr. Walsh getting Mr. Shorter "in trouble." (*Id.*)

Mr. Shinholster allegedly told Mr. Shorter to file a grievance and have his family contact the prison so that Mr. Shorter could see an outside dermatologist. (*Id.* ¶ 10.) Mr. Shorter also talked to the following staff members: Ms. Fernandez, his block officer; Mr. Gery, a counselor; and Mr. Nunez, a unit manager. (*Id.*) These staff members largely reiterated Mr. Shinholster's

---

[2]   Mr. Kurklin is a party to this case, but he is not one of the Medical Defendants. To date, no counsel has entered an appearance on his behalf.

instructions, and Mr. Nunez advised Mr. Shorter to write to Ms. Sipple. (*Id.*) Ms. Sipple, in response to Mr. Shorter's letter, allegedly replied that he had been "given multiple opinions to address Rash symptoms—all of which [Mr. Shorter] refused. Dermatologist is not medically necessary at this time." (*Id.*) Mr. Shorter then filed a grievance in July 2022. (*Id.*; *see also* Medical Defs.' Mot. to Dismiss Ex. B, ECF No. 17-3 [hereinafter Grievance Record].)[3] Mr. Shorter alleges that he also raised these issues with Mr. Sorber, the superintendent, who said he would look into the problem but explained that Mr. Walsh worked for a private company, not the Department of Corrections. (Compl. ¶ 12.) Mr. Shorter's grievance was denied in August 2022, and he appealed that decision a few days later. (*Id.* ¶ 13.) Around the same time, he received a response from Mr. Sorber that Mr. Shorter had "seen other provider [*sic*] than Joe Walsh, they have offered you treatments you are refusing." (*Id.*) Mr. Shorter disputes that he ever rejected treatment offered for his condition. (*Id.*) Shortly thereafter, Mr. Shorter moved from SCI Phoenix to SCI Chester, where he again requested medical treatment. (*Id.* ¶ 14.) Mr. Shorter alleges that his new medical provider, Mr. Nicholson, immediately recognized that Mr. Shorter indeed had scabies, as Dr. Akenten had initially suggested. (*Id.*) Mr. Shorter's condition eventually improved as a result of various medications prescribed by Mr. Nicholson. (*Id.* ¶ 15.)

---

[3] This Court may consider Exhibit B to the Medical Defendants' Motion without converting the Motion to one for summary judgment. Mr. Shorter has not claimed that the grievance records contained therein are inauthentic or incomplete. He has also referred to these records in his Complaint and alleged that he exhausted his administrative remedies. *See, e.g.*, *Freedland v. Fanelli*, 2019 WL 2448810, at *2 (E.D. Pa. June 10, 2019) (citing *Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004)). The Court declines, however, to consider the affidavit of Keri Moore (*see* Medical Defs.' Mot. to Dismiss Ex. C, ECF No. 17-4), as doing so would require a conversion to summary judgment, *see Berry v. Klem*, 283 F. App'x 1, 4 (3d Cir. 2008) ("Even if the grievances, appeals, and responses are indisputably authentic, especially insomuch as Defendants and [the plaintiff] rely on some of the same documents from the prison administrative process, the declarations are evidentiary materials that cannot be considered on a motion to dismiss.").

This Court will construe the claims asserted in Mr. Shorter's Complaint as follows. He has alleged the violation of his right to be free from cruel and unusual punishment under the Eighth Amendment to the U.S. Constitution and seeks damages through 42 U.S.C. § 1983. (*Id.* ¶ 20.) He has likewise alleged medical malpractice under state law. (*Id.* ¶ 21.) Mr. Shorter includes an additional allegation, styled as "Count II," that claims that Defendants "intentionally delayed appropriate medical treatment to petitioner's serious medical need." (*Id.* at 20.) Absent an indication that this allegation supports an independent basis for relief, the Court will interpret it as supporting the Eighth Amendment and medical malpractice claims. Mr. Shorter also appears to pursue a claim for the intentional infliction of emotional distress under a heading titled "Medical or Emotional Claim." (*Id.* ¶¶ 18–19.) Finally, Mr. Shorter requests relief in the form of damages and a declaratory judgment that Defendants violated his Eighth Amendment rights and committed medical malpractice. (*Id.* at 19.)

The Medical Defendants now move to dismiss Mr. Shorter's Complaint on three main grounds: he failed to properly exhaust his administrative remedies; he failed to sufficiently plead deliberate indifference as part of his Eighth Amendment claim; and his noncompliance with Pennsylvania procedural rules regarding certificates of merit means that he will be unable to prove his medical malpractice claim. The Commonwealth Defendants likewise raise concerns about administrative exhaustion, and they further argue as follows: Mr. Shorter failed to sufficiently plead the personal involvement and deliberate indifference of the Commonwealth Defendants, dooming his Eighth Amendment claim; qualified immunity shields the Commonwealth Defendants as to the Eighth Amendment claim; and Pennsylvania's Sovereign Immunity Act precludes the Commonwealth Defendants' liability for the medical malpractice claim. Because the Court resolves the Motions on the issue of administrative exhaustion, it does not reach Defendants' other positions.

## II. JURISDICTION AND STANDARD OF REVIEW

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 in light of Mr. Shorter's Eighth Amendment claim. Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events in this case occurred in this District, as SCI Phoenix is located therein. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim satisfies the plausibility standard when the facts alleged "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Burtch v. Millberg Factors, Inc.*, 662 F.3d 212, 220–21 (3d Cir. 2011) (citing *Iqbal*, 556 U.S. at 678). While the plausibility standard is not "akin to a 'probability requirement,'" there nevertheless must be more than a "sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

The Court's analysis changes when a party represents itself *pro se*. The U.S. Supreme Court requires courts to "liberally construe" a *pro se* document. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A *pro se* complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972). The Third Circuit has instructed courts to permit a curative amendment if a complaint is vulnerable to dismissal for failure to state a claim unless an amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).

### III. ANALYSIS

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C.A. § 1997e(a). Administrative exhaustion is "a threshold requirement" that this Court will consider first. *Downey v. Pennsylvania Dep't of Corr.*, 968 F.3d 299, 304 (3d Cir. 2020). To properly exhaust administrative remedies, a litigant must "complete the administrative review process in accordance with the applicable procedural rules," which "are supplied by the individual prisons." *Id.* at 305 (first quoting *Woodford v. Ngo*, 548 U.S. 81, 88 (2006), and then citing *Jones v. Bock*, 549 U.S. 199, 218 (2007)).

The Pennsylvania Department of Corrections sets forth the procedural rules applicable here in DC-ADM 804. *See* Pa. Dep't of Corr., DCM-ADM 804, Inmate Grievance Sys. (2015), https://www.cor.pa.gov/About%20Us/Documents/DOC%20Policies/804%20Inmate%20Grievances.pdf (last visited Apr. 3, 2024). In relevant part, DC-ADM 804 requires persons filing a grievance to "include a statement of the facts relevant to the claim." *Id.* § 1(A)(11). In particular, an individual "shall identify individuals directly involved in the event(s)," and "[i]f the inmate desires compensation or other legal relief normally available from a court, the inmate must request the specific relief sought in his/her initial grievance." *Id.* § 1(A)(11)(b), (d). Because including this information in the grievance process is mandatory, courts have held that the failure to do so bars an individual's claims in subsequent litigation. *See, e.g.*, *Williams v. Pennsylvania Dep't of Corr.*, 146 Fed. App'x 554, 557 (3d Cir. 2005) ("[I]n the absence of any justifiable excuse, a Pennsylvania inmate's failure to properly identify a defendant constituted a failure to properly exhaust his administrative remedies under the PLRA." (citing *Spruill*, 372 F.3d at 234)); *Hobson v. Tiller*, 2021 WL 2191282, at *8 (W.D. Pa. May 6, 2021) ("Failure to request monetary

compensation in an initial grievance means that a court must dismiss a legal claim in federal court seeking money damages . . . ." (gathering cases)), *report and recommendation adopted*, 2021 WL 2190818 (W.D. Pa. May 31, 2021).

The only medical providers included in Mr. Shorter's initial grievance are Mr. Kurklin and Mr. Walsh. (Grievance Record at 5.) Mr. Shorter also mentions that he discussed his complaints with his block officer, counselor, unit manager, and Ms. Sipple, though he does not complain of any improper conduct on their part. (*Id.*) In that same grievance, he does not request *any* relief that he now seeks in this case, let alone monetary relief in particular, despite that form's instruction to "[s]tate all relief that you are seeking." (*Id.*) Only in Mr. Shorter's Appeal to Facility Manager form, the first step in the appellate process, does he request that he be seen by a dermatologist and that he receive compensatory and punitive damages. (*Id.* at 7.) He then reiterated these requests in the Appeal to Final Review form, which corresponds to the second and final stage of the prison's appellate process. (*Id.* at 9.)

Notwithstanding the inclusion of monetary remedies in Mr. Shorter's appellate filings, his failure to request them in his initial grievance forecloses his ability to pursue them now. *See Wright v. Sauers*, 729 F. App'x 225, 227 (3d Cir. 2018) ("[T]he Prison's policy required [the plaintiff] to specifically request monetary relief in his initial grievance. Because [he] failed to do so, he defaulted his claim for money damages."). In *Endrikat v. Ransom*, for example, the plaintiff "did not request monetary damages anywhere in the original grievance," and although "he subsequently requested monetary damages in his appeal to the facility manager," it remained the case that "the plain language of DC-ADM 804 requires a plaintiff to request monetary damages in the inmate's 'initial grievance.'" 2023 WL 3609157, at *4 (M.D. Pa. May 23, 2023) (quoting DC-ADM 804 § 1(A)(11)(d)), *aff'd sub nom. Endrikat v. Little*, 2023 WL 8519196 (3d Cir. Dec. 8, 2023).

Accordingly, the *Endrikat* court dismissed the plaintiff's claims for damages, and this Court must likewise reject Mr. Shorter's pursuit of damages through section 1983.

For similar reasons, the Court must dismiss Mr. Shorter's request for a declaratory judgment that Defendants violated his Eighth Amendment rights. The U.S. Supreme Court has explained that the PLRA's exhaustion requirement applies not just to section 1983 claims but "to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 524, 532 (2002); *see also Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001) (holding that "Congress has provided in § 1997e(a) that an inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues"). At most, the only relief requested in Mr. Shorter's initial grievance is that he be seen by a dermatologist. (Grievance Record at 5.) As with his claim for monetary relief, he failed to make any indication that he sought a determination that Mr. Walsh and Mr. Kurklin had violated his Eighth Amendment rights. His request for a declaratory judgment is therefore precluded.

Under DC-ADM 804, a grievance must be filed "within 15 working days after the event upon which the claim is based." DC-ADM 804 § 1(A)(8). Because the events relevant to this case transpired no later than late August 2022, when Mr. Shorter was transferred to SCI Chester (Compl. ¶ 14), Mr. Shorter's federal claims have been procedurally defaulted, and any amendment to his Complaint would be futile. *Spruill*, 372 F.3d at 234; *Endrikat*, 2023 WL 3609157, at *5 (denying leave to amend where claims were procedurally defaulted). In turn, because the Court has dismissed Mr. Shorter's federal claims—*i.e.*, all claims over which this Court has original

jurisdiction—the Court will dismiss without prejudice Mr. Shorter's state law claims. *See, e.g.*, *Richardson v. Folino*, 2012 WL 6552916, at *18 (W.D. Pa. Dec. 14, 2012).[4]

## IV.   CONCLUSION

For the foregoing reasons, the Court grants Defendants' Motions. A corresponding order accompanies this memorandum.

---

[4]   Because Mr. Shorter's federal claims have not been properly exhausted and the Court declines to consider his state law claims, the Court need go no further in resolving Mr. Shorter's case. The Court notes, however, that in addition to failing to exhaust his requests for monetary and declaratory relief, Mr. Shorter's failure to identify in his initial grievance many of the Defendants in this litigation would provide an independent basis for dismissing a significant portion of this case. The Third Circuit has explained that "[t]he purpose of the regulation here"— that is, DC-ADM 804's requirement to "identify individuals directly involved in the event(s)," DC-ADM § 1(A)(11)(b)—"is to put the prison officials on notice of the persons claimed to be guilty of wrongdoing." *Spruill*, 372 F.3d at 234. Of the parties named in this case, only Mr. Kurklin and Mr. Walsh are complained of in Mr. Shorter's initial grievance. (Grievance Record at 5.) As noted above, Mr. Shorter's grievance also lists his block officer, counselor, unit manager, and Ms. Sipple as staff that he contacted before submitting the grievance. (*Id.*) Although Mr. Shorter did not provide names in the grievance for the block officer, counselor, or unit manager, they almost certainly correspond to Ms. Fernandez, Mr. Gery, and Mr. Nunez, respectively. (*See* Compl. ¶ 10.)

Not named in the grievance, however, are Mr. Sorber, Dr. Akenten, Ms. Saunders, Mr. Shinholder, Ms. Green, Mr. Raymond, Ms. Almond, Ms. Ford, and Mr. Nicholson. Courts have held that identifying the relevant individuals may be excused where doing so is not practicable, such as where the plaintiff was unconscious during the complained-of conduct, *see Martin v. Sec'y of Corr.*, 2018 WL 1158250, at *4 (M.D. Pa. Mar. 5, 2018), or where the prison's grievance process itself excused the omission by identifying the relevant actor in the prison's response to the plaintiff's grievance, *Spruill*, 372 F.3d at 234. No such exception applies here, and Mr. Shorter has not provided any other "justifiable excuse," *see Williams*, 146 Fed. App'x at 557, for failing to identify Mr. Sorber, Dr. Akenten, Ms. Saunders, Mr. Shinholder, Ms. Green, Mr. Raymond, Ms. Almond, Ms. Ford, and Mr. Nicholson in his initial grievance. He has therefore not exhausted his claims against these individuals.